Filed 1/16/14  In re A.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.L. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.H.,<br><br>Defendant and Appellant. | E058579<br><br>(Super.Ct.No. RIJ118447)<br><br>**OPINION** |

APPEAL from the Superior Court of Riverside County.  Tamara Wagner,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and

Appellant.

Pamela J. Walls, County Counsel, and Anna M. Marchand and Julie Koons Jarvi,

Deputy County Counsel, for Plaintiff and Respondent.

C.H. (Mother) appeals after the termination of her parental rights to A.L. and J.L.[1] at a Welfare and Institutions Code section 366.26[2] hearing. Mother makes one claim on appeal that she received ineffective assistance of counsel due to counsel's failure to object to the supplemental section 387 petition filed in December 2011 for lack of evidence to support the jurisdiction and disposition findings. We affirm the juvenile court's order terminating Mother's parental rights.

I

PROCEDURAL AND FACTUAL BACKGROUND

A.    *Detention*

Mother had five children who were initially part of this dependency proceeding: A.A. (14 years old); K.A. (13 years old); E.A. (12 years old); A.L. (3 years old); and J.L. (1 year old). On July 30, 2009, the Riverside County Department of Public Social Services (Department) received a report of caretaker/incapacity and general neglect. It was reported that Mother had gone to Mexico on July 11, 2009, and left the five children in the care of their 20-year-old sibling, I.H. I.H. attempted to apply for welfare in her absence.

A social worker responded to the home on July 30, 2009. Upon arrival, couches and furniture were observed piled up outside the house. J.L. was playing outside in only a diaper. A.L. was also outside and they both were covered in dirt. The wood on the

_____

[1]    J.L. is also referred to as J.D.
[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

porch was rotted and sunk in. Blankets that were on top of the wood were covered in ants and roaches. A woman who claimed to be the children's "aunt" was at the home.

A sliding glass door leading to the house was shattered and still had shards of glass hanging to the frame. In the living room, clothes and food (including chicken bones) were on the floor. In one of the bedrooms, there was a dirty twin bed with no sheets, food and empty food containers on the floor. There were also dirty plates and toys. In the bathroom, there were feces in the toilet and dirty toilet paper throughout the bathroom. There was a broken mirror and the bathtub was completely black from mold. The only food in the house was a "rotted" plate of food in the freezer. There were dirty dishes in the sink and a hose was being used as the faucet. There were roaches throughout the house.

K.A. was missing from the home. While the social worker was inspecting the house, E.A., A.L, and J.L. were able to leave the home and the "aunt" refused to tell the social worker where they had gone. The "aunt" then asked the social worker what would happen if she was really Mother. Mother admitted she lied about her identity. Mother preferred to go to jail rather than tell the social worker where her children were located. Mother finally told the social worker she had told the children to walk to her sister's house. The children were located and all of them were barefoot. J.L. had a soaking diaper; A.L. was in pajamas; and E.A. was shirtless.

A.A., E.A., A.L., and J.L. were placed in a foster home together. A.A. refused to change clothes, bathe, or eat. A.A. stated that his father, Alejandro A.,[3] had beaten him when they were younger. He stated that no one cleaned their house. When they had moved into the house, there were already roaches and the bathtub was rotted. There was no food in the house because they had run out of food stamps for the month. Francisco L., who was the father of J.L. and A.L., had been deported to Mexico. Mother refused to disclose the whereabouts of K.A. A prior referral was made in 2006 for the family and there was little food in the house at that time.

On August 3, 2009, a section 300 petition was filed by the Department against Mother for all five children. The petition alleged Alejandro was the biological father of K.A., A.A., and E.A.; for A.L. and J.L., their father was listed as Francisco. It was alleged against Mother, under section 300, subdivision (b), that she failed or was unable to supervise or protect her children adequately, and she willfully or negligently failed to provide them with adequate clothing, food, and shelter. As for Francisco and Alejandro, they were reported to have not provided for the children (§ 300, subd. (b)) and failed to provide adequate support (§ 300, subd. (g)).

At a detention hearing held on August 4, 2009, the juvenile court found a prima facie case and ordered the children detained. K.A. was present at the hearing with Mother and she was placed with her siblings.

---

[3] Alejandro was in prison for 96 years for molesting I.H.

4

B.    *First Jurisdictional/Dispositional Report and Hearing*

In a jurisdictional/dispositional report filed on September 11, 2009, the Department recommended that Mother receive reunification services for all the children and services be denied to both fathers. E.A., A.L., and J.L. were placed together in a foster home; K.A. and A.A. were placed in different homes. Mother had one prior incident of vandalism and had an outstanding misdemeanor warrant.

A.A. accused E.A. of hurting him when they were together. A.A. and I.H. did not get along and he was mad at Mother that he had to be in foster care. His other siblings hated him.

K.A. was also interviewed. Throughout the interview she had an attitude and wanted to know why she was being interviewed. K.A. said that she would get blamed for everything that happened in the house. She admitted she had threatened to kill one of her brothers and her previous foster parents. She also admitted in her previous foster home she threatened to kill herself.

E.A. was also interviewed. E.A. claimed that A.A. hit him and was a bully. He had left welts on his back. He claimed A.A. caused the problems; he got along with K.A.

Mother claimed the house was dirty because they were moving. She insisted she bathed the children but they played in the dirt. Mother was living with I.H. in a two-bedroom apartment. Mother believed the fighting between the siblings was just sibling rivalry. Mother was not working and depended on cash aid and I.H. for support. Mother did not think she needed any services from the Department because she was not using

drugs and "not a women [sic] of the streets." Mother wanted the children placed with her mother.

At a visit between A.A. and Mother, he called her names and cursed at her. He had to be restrained. After a visit with Mother, K.A. refused to return to the foster home and threatened to kill her siblings and foster parents. During a visit with Mother, J.L. and A.L. were fighting with each other and the monitor had to intervene; Mother just watched and laughed. During another visit, K.A. yelled and cursed at Mother for forgetting her clothes. A.A. punched another child in the foster home.

An addendum report was filed on October 29, 2009. A.A. had been moved to another foster home and had gotten into an altercation with a younger child at the home. K.A. was adjusting well but wanted to be placed with her younger siblings. E.A., J.L., and A.L. were doing well in their foster home. On October 21, 2009, K.A. stated that she had gotten into an altercation with E.A. at church. During a visit with Mother, K.A. had cried, yelled, and screamed. Mother and the monitor had a hard time calming her down.

Another addendum report was filed on December 9, 2009. A.L. had not wanted to stay at a visit with Mother. A.A. had left a visit when Mother did not have money for him. E.A. and A.A. had been suspended from school. At another visit, it was reported that A.A. cursed at Mother for giving him shoes that did not fit him.

The jurisdictional/dispositional hearing was conducted on December 14, 2009. Mother and Alejandro were present. Mother submitted on the petition. The juvenile

6

court found the allegations in the petition true. Francisco and Alejandro were denied reunification services. Mother was granted reunification services.

C.   *Review Reports*

On June 2, 2010, the Department filed its report in anticipation of the six-month status review hearing. The Department recommended that all of the children remain dependents of the court, but if Mother was successful in overnight weekend visits, that custody be returned to her on a Family Maintenance program.

Mother was living in a two-bedroom home in Riverside. Mother had obtained a job as a housecleaner. A majority of the report addressed the issues that A.A., K.A., and E.A. were experiencing in their placements and at school.

A.L. was developing normally. She had a strong bond with both Mother and the foster mother. J.L. was bonded to A.L. and the foster mother. The younger siblings were doing better with K.A. and A.A. not being with them. Mother was actively participating in services. She voluntarily completed an anger management course and a second parent education course. It was anticipated E.A., A.L., and J.L. would be returned to Mother's care.

A status review hearing was conducted on June 14, 2010. The children remained dependents of the court. The trial court ordered that weekend and overnight visits between Mother and E.A., A.L., and J.L. begin immediately. A.A. and K.A. would be considered for overnight and weekend visits if their behaviors improved.

A family reunification status report was filed on November 30, 2010. E.A., A.L., and J.L. had been placed with Mother on Family Maintenance on August 13, 2010. K.A. and A.A. remained in separate foster homes. A.A. continued to struggle emotionally and was not attending school. K.A. was doing better emotionally and doing well in school.

A.L. and J.L. were developing normally and doing well. K.A. stayed at Mother's house on the weekends and the visits were going well. A.A. also had weekend visits. It was recommended that services be continued for six months.

On December 9, 2010, an addendum report was filed. K.A. and A.A. had been placed with Mother on November 30, 2010. On December 14, 2010, the juvenile court ordered that the children remain dependents of the court but they were placed in the care and custody of Mother. Family Maintenance services were ordered. Wraparound Services were ordered for A.A.

D.      *Section 387 Petition*

On May 27, 2011, the Department filed a section 364 status review report. On March 3, 2011 and April 11, 2011, there were reports that A.A. had physically abused A.L. On March 10, 2011, there was a report from K.A.'s school that she was "'smelly and dirty.'" In February 2011, Mother moved to Jurupa and the Department lost contact with the family for two to three weeks. She moved back to Riverside. A first visit to the new home showed it was in disarray and smelled of urine. The home was in good order on a second visit.

8

Mother had been ordered to participate in Wraparound Services in December 2010, but was refusing to participate. She found them too intrusive. A.A. was not attending school. On May 20, 2011, A.A. got into an argument with Mother and broke a window. A.A. was aggressive with the Wraparound Services workers and wanted to be put back in placement.

On March 4, 2011, K.A. was found at a school to which she was not enrolled. She hid from law enforcement. She told a counselor at her own school she was going to choke her, while twisting the head of a doll. E.A. had beat up a child at school so badly that he was possibly being expelled from school.

On March 23, 2011, A.L. was accepted in the Head Start school program. She attended one day and then Mother did not take her back. She was at home with A.A. and J.L. The Department noted that the cleanliness of the home was no longer an issue, but there were additional problems. Further, safety of A.L. was an issue due to the two referrals for A.A. abusing her.

On June 14, 2011, the juvenile court ordered that K.A., E.A., A.L., and J.L. remain on Family Maintenance and that they receive Wraparound Services. If Mother did not participate in Wraparound Services, the children would be placed in foster care. A.A. was detained and placed in a group home pursuant to a section 387 petition that was apparently filed as to him only.

On November 30, 2011, a section 364 review report was filed for K.A., E.A., A.L., and J.L. Despite A.A. being removed to a group home, he ran away from the social

worker. Mother had moved two times during the reporting period. K.A. had been suspended from school numerous times and was failing her classes. K.A. had to be hospitalized because she was caught breaking into a local church and threatened to kill herself. Mother did not respond to any telephone calls. E.A. was failing all of his classes.

A.L. was bonded to Mother but had a hard time following her directions. She was enrolled in kindergarten but had poor attendance. J.L. was developing normally. J.L. was affectionate with Mother.

On September 8, 2011, a Wraparound Services provider went to the home. J.L. was home alone and had a swollen eye. Mother arrived home later. A.A. was living in the home even though he had run away and was not in his proper placement. In October 2011, the family was evicted from their home and Mother did not advise the Department of her whereabouts. Mother continued to be evasive with persons from Wraparound Services. Mother had been given telephones and her bill was paid, but she was still difficult to contact. Mother was unable to secure proper housing without the help of Wraparound Services.

On December 2, 2011, a section 387 supplemental petition was filed for K.A., E.A., A.L., and J.L. A detention report for the supplemental petition was filed. It was recommended that E.A., A.L., J.L., and K.A. become dependents of the juvenile court. It was recommended that K.A. and E.A. be placed in a group home. It was also

recommended that section 319, subdivision (b)(1)[4] findings be made as to Mother. J.L. and A.L. had been placed in a foster home on November 30, 2011.

E.A. had not attended school since October 31, 2011, and Mother was unaware of his whereabouts. J.L. and A.L. were dirty and smelled like urine when they were detained on the supplemental petition. K.A. ran away from the social worker. Mother continued to be evasive with the Department and "portray a defeated attitude when handling her children."

At the hearing on the section 387 petition conducted on December 5, 2011, Mother was appointed new counsel. Mother objected to the allegations in the section 387 petition. E.A. was present in court but K.A. could not be found. The juvenile court found a prima facie showing that K.A., E.A., A.L., and J.L. came within section 387. The juvenile court found that continuance in the home was contrary to the children's welfare, and there was a substantial danger to the physical and emotional health of the children. The reasons for the detention were that Mother had not demonstrated an ability to care for the children, and failed to follow through with court-ordered services.

A jurisdiction/disposition report was filed on December 21, 2011. It was recommended that K.A., E.A., A.L., and J.L. remain dependents of the court, family

---

   [4]     Section 319, subdivision (b)(1) provides that a child who is detained under a section 300 petition shall be released from custody unless "[t]here is a substantial danger to the physical health of the child or the child is suffering severe emotional damage, and there are no reasonable means by which the child's physical or emotional health may be protected without removing the child from the parent's or guardian's physical custody."

reunification services be denied to Mother pursuant to section 361.5, subdivision (b)(10), and that group home placement be authorized for K.A. and E.A. K.A. was still a runaway. A.L. and J.L. remained in foster care.

It was suspected that Mother was still allowing A.A. to remain in her home. K.A. had reported that E.A. was using drugs. A.A. had told K.A. that he wanted to kill E.A by "carving" him. K.A. also reported that when she stayed with Mother, that A.A. would pick the lock to enter her bedroom. She claimed he only wanted to talk to her but it was suspected he was molesting her. K.A. and A.A. had been in physical altercations, but the police were not called so they would not be taken away from Mother.

It was discovered that in August 2011, E.A. had been arrested for marijuana possession with the intent to sell. On December 11, 2011, Mother confirmed that E.A. was using drugs and staying with his girlfriend.

Mother was being evicted on December 19, 2011. Mother's neighbors reported that A.A. was staying at the home and that Mother never paid rent. K.A. had been seen entering the residence, and then shouting and punching were heard from inside. Mother regularly left the home early in the morning and did not return until late at night.

At a hearing on December 27, 2011, E.A., K.A., and A.A. were all ordered detained and were given court-ordered placement. E.A. ran from the courtroom and could not be found. A.A. and K.A. ran from the social worker in the parking lot and could not be found. An addendum report was filed on February 1, 2012. The Department recommended no reunification services for Mother and group home

placement for K.A. and E.A.  K.A. and E.A. were still missing.  J.L. and A.L. remained in foster care.

Mother had not been consistent with her visitation with J.L. and A.L.  During the visits she did attend, she spent most of her time with A.L.  On January 26, 2012, Mother claimed she was living with an aunt but never provided an address.

The contested section 387 petition hearing was conducted on February 7, 2012. Mother's counsel offered no affirmative evidence but requested that services not be terminated.  Mother wanted the children to be at home with her and felt they would follow her rules.

The juvenile court indicated it had read the Department's reports written on November 30, December 2, December 21, 2011; and February 1, 2012.  Counsel for Mother did not object to the reports.  The juvenile court sustained the petition.  The previous disposition was deemed ineffective in the protection of the children and they were continued as dependents pursuant to section 300.  The children were removed from Mother's care and she was denied reunification services.  A section 366.26 hearing was not set for A.L. and J.L. because there was no adoptive home for the children.

E.    *Section 366.26 Hearing*

On September 4, 2012, A.L. and J.L. were placed in a prospective adoptive home. A section 366.26 hearing was set.  K.A., who was 16 years old, and A.A., who was 17 years old, were allowed to live with Mother because they continued to leave their

13

placements, and each had emotional problems. Their cases were closed. E.A. remained missing.

A.L. and J.L. were thriving in the adoptive home. A.L. was discovered to have some learning disabilities. At the section 366.26 hearing conducted on April 18, 2013, Mother's parental rights to A.L. and J.L. were terminated and they were freed for adoption.**5**

## II

## INEFFECTIVE ASSISTANCE OF COUNSEL

Mother contends that she received ineffective assistance of counsel because the supplemental section 387 petition filed on December 2, 2011 failed to state a cause of action as to A.L. and J.L. She claims that the allegation in the petition in section S-1 that Mother continued to demonstrate a limited ability to parent the children, failed to follow through with court-ordered services and ensure the children's needs are being met, was not supported by any evidence as it pertained to A.L and J.L. Her counsel should have objected to the petition and she was prejudiced because no reunification services were ordered, and her parental rights were eventually terminated.

Section 317.5, subdivision (a), provides that, "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." In order to establish that counsel in a dependency proceeding was ineffective, "a parent 'must demonstrate both that: (1) [her] appointed counsel failed to act in a manner expected of

---

**5** Mother filed a section 388 petition on April 18, 2013, which was denied.

14

reasonably competent attorneys acting as diligent advocates; and that (2) this failure made a determinative difference in the outcome, rendering the proceedings fundamentally unfair in that it is reasonably probable that but for such failure, a determination more favorable for [the parent's] interests would have resulted.' [Citations.] In short, [the parent] has the burden of proving both that [her] attorney's representation was deficient and that this deficiency resulted in prejudice. [Citation.]" (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98.)

"A court need not evaluate whether counsel's performance was deficient before examining prejudice suffered by defendant. [Citation.] Thus, a court may reject a claim if the party fails to demonstrate that but for trial counsel's failings, the result would have been more favorable to the defendant. [Citation.]" (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180.)

A supplemental petition under section 387 generally seeks to "modify a dispositional order by establishing the need for a 'more restrictive level' of custody. [Citation.]" (*In re Jonique W.* (1994) 26 Cal.App.4th 685, 690.) "The ultimate 'jurisdictional fact' necessary to modify a previous placement with a parent or relative is that the previous disposition has not been effective in the protection of the minor. [Citations.] The department must prove the jurisdictional facts by a preponderance of legally admissible evidence. [Citations.]" (*Id.* at p. 691.) Where the jurisdictional facts are established, the court must address the further question of appropriate disposition. The Department must "show by 'clear and convincing evidence [that] . . . [t]here is a

15

substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor' if left in parental custody 'and there are no reasonable means by which the minor's physical health can be protected without removing the minor from [parental] physical custody.' [Citations.]" (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1077.)

We review the juvenile court's findings at the adjudicatory and dispositional phases of the section 387 hearing for substantial evidence. (*In re H.G.* (2006) 146 Cal.App.4th 1, 12-14; *In re A.O.* (2004) 120 Cal.App.4th 1054, 1061, 1064.) "We review the evidence in the light most favorable to the trial court's determinations, resolve all evidentiary conflicts in favor of the prevailing party, and indulge in all reasonable inferences to uphold the trial court's findings. [Citation.] We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.] The burden is on the party or parties challenging the findings and orders of the trial court to show there is no evidence of a substantial nature to support the finding or order. [Citation.]" (*In re H.G., supra,* at pp. 12-13.)[6]

---

[6] At oral argument, Mother's counsel relied upon *In re Athena P.* (2002) 103 Cal.App.4th 617, 628 [Fourth District, Div. Two]. That case held as follows: "If the evidence at the jurisdictional hearing was insufficient, [defendant] can seek reversal on that ground. But if the evidence was sufficient to support the juvenile court's findings, any failure of the petition to state a cause of action became harmless error. Either way, the only issue before us is the sufficiency of the evidence at the jurisdictional hearing." (*Ibid*.) *Athena P.* merely requires a review of the sufficiency of the evidence, which we conduct in this case. We conclude there was sufficient evidence to support the section 387 petition, and therefore, Mother cannot show ineffective assistance of counsel.

16

Initially, pursuant to rule 8.452 of the California Rules of Court, a challenge to the juvenile court's determination of jurisdiction and the disposition of a section 387 supplemental petition, and the setting of a section 366.26 hearing can only be challenged by a writ petition. (*In re Athena P., supra,* 103 Cal.App.4th at p. 624 [Fourth District, Div. Two] ["Failure to appeal from an appealable dispositional order waives any substantive challenge to the jurisdictional findings. [Citation.]"].) However, we note that the juvenile court did not advise Mother of her rights to file an extraordinary writ. We will review the claim as the section 387 petition was supported by substantial evidence, and therefore, no ineffective assistance of counsel claim is founded. (See *In re Athena P., supra,* at p. 625.)

Substantial evidence supported the juvenile court's conclusion that there was a substantial danger to the physical health, safety, protection, or physical or emotional well-being of A.L. and J.L. if left in Mother's custody, and that there were no reasonable alternatives to removal. The section 387 supplemental petition alleged as follows: "[Mother]'s four children were placed back in her care in November of 2010. Since then, Wraparound Services have been in place, however, the family has failed to benefit from services. Additionally, she continues to keep the kids from the Department. She fails to provide proper housing (stability) for her children and often relocates without notifying the Department. The children's behaviors have deteriorated. Minors don't attend school. Another minor, [K.A.], has had several 5150 hospitalizations and makes threats to harm herself and others. Mother does not return the Department's calls and does not know the

17

whereabouts of her son [E.A.] who has not attended school since 10-30-11. Mother continues to withhold pertinent information from the Department. Fails to protect her children."

The original detention occurred in July 30, 2009. The conditions of the home at that time were deplorable. Mother was able for a brief period of time to engage in reunification services, and with the Department's assistance, maintained her housing. As a result, she was given custody of the children but she was subject to Family Maintenance and Wraparound Services. Regrettably, she was unable to maintain stability in the family.

In reaching its decision on the section 387 supplemental petition, the juvenile court reviewed the reports filed by the Department on November 30, 2011, December 2, 2011, December 21, 2011 and February 1, 2012. Pursuant to the November 30 report, A.L. had poor attendance at kindergarten. A Wraparound Services provider came to the home and found J.L. alone. He had a swollen eye. In addition, the family had been evicted.

According to the December 2 report, when A.L. and J.L. were detained on the supplemental petition, they were dirty and smelled of urine. Mother continued to be evasive with the Department.

The December 21 report noted that Mother was allowing A.A. to live in her home despite him being ordered into a group home. A.A. was dangerous as he threatened to carve up E.A. and may possibly have been molesting K.A. Mother was once again being evicted. Mother had no control over A.A., K.A., and E.A. who continued to return to her home when they ran away from their placements. Finally, Mother had been inconsistent in her visitation with A.L. and J.L.

Based on the foregoing, there was more than substantial evidence presented that Mother demonstrated a limited ability to parent A.L. and J.L., and failed to follow through with court-ordered services for them. Mother could not control her older children who were violent with each other and other persons, which presented a real danger to A.L. and J.L. She failed to make sure that A.L. was attending school. When they were detained on the section 387 petition, they were dirty and smelled of urine. She did not comply with court-ordered visitation, disappointing J.L. and A.L over and over. There was substantial evidence presented to support the section 387 supplemental petition.

Mother cannot show ineffective assistance of counsel as an objection to the section 387 petition for failing to state a cause of action as to A.L. and J.L. would not have been successful, and she cannot show how she was prejudiced. We reject Mother's ineffective assistance of counsel claim.

III

DISPOSITION

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

WE CONCUR

RAMIREZ
P. J.

HOLLENHORST
J.